## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

## SPARTANBURG DIVISION

| | | |
|---|---|---|
| GIBBS INTERNATIONAL, INC., | ) | C/A No.  7:15-cv-02634-MGL |
| | ) | |
| Plaintiff, | ) | |
| | ) | **SECOND AMENDED COMPLAINT** |
| v. | ) | **(Jury Trial Demanded)** |
| | ) | |
| ANTARCTICA STAR I, LP, | ) | |
| ANTARCTICA STAR, LLC, ACRE, | ) | |
| LLC, AND CHANDRA PATEL, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Gibbs International, Inc. ("Gibbs"), complaining of Defendants Antarctica Star I, LP ("AS LP"), Antarctica Star, LLC ("AS LLC"), ACRE, LLC ("ACRE"),  and Chandra Patel ("Patel") (all Defendants are collectively referred to as "Defendants"), pursuant to Rule 15 of the Federal Rules of Civil Procedure, hereby amends its complaint as follows:

### Nature of the Action and the Parties

1.	Gibbs brings this action for the recovery of damages caused by Defendants' breach of contract with Gibbs and by Defendants' other improper conduct.  Over time, Gibbs paid $10 million in deposits and $500,000 in working capital advanced, and Defendants refuse to pay the total amount now due to Gibbs in-spite of Defendants' participation in a $24 million settlement with the State of California out of which Gibbs is entitled to be paid.

2.	Gibbs is a corporation organized and existing pursuant to the laws of the State of South Carolina and has its principal place of business in the State of South Carolina.

3.	Gibbs is informed and believes that Defendant AS LP is a Delaware limited partnership which claims to be a citizen of New York and California based on the citizenship of its partners.  Gibbs is informed and believes that Defendant AS LLC is a Delaware limited

liability company which claims to be a citizen of New York and California based on the citizenship of its members.

4.      Gibbs is informed and believes that Defendant ACRE is a Delaware limited liability company.

5.      Gibbs is informed and believes that Defendant Patel is an individual who is believed to be a resident of the State of New York.

6.      Two agreements involved in this matter specify South Carolina as the required forum and call for the application of South Carolina law.  One of those agreements provides that the portion of the settlement proceeds (the "Agreed Portion") to be paid to Defendants and/or any related individual or entity are to be paid into a South Carolina court by the escrow agent and making South Carolina the appropriate forum for dispute resolution.  Those agreements also call for the application of South Carolina law.  While there are several agreements between the parties, the pivotal agreement for jurisdictional purposes is the escrow agreement executed by all Defendants providing that the escrow agent is to pay the Agreed Portion into a South Carolina court.  The president of the escrow agent has signed a sworn declaration stating that the escrow agent will pay the money it receives into a South Carolina court after it is deposited in escrow. Defendants also agreed to pay the Agreed Portion into the escrow and any failure to do so is a breach of Defendants' responsibilities and a blatant attempt to manipulate the agreed-upon jurisdiction of this Court.  Gibbs seeks in this action to recover its share of the Agreed Portion.

**Factual Background**

**The Alleged Agreement to Buy Real Property from the State of California**

7.      The allegations of the foregoing paragraphs of the complaint are incorporated herein by reference.

8.      California First, LP and California First, LLC (collectively, "California First") claim that during the financial crisis in the State of California, the California Legislature authorized the State's Department of General Services ("CDGS") to sell eleven state-owned properties to try to reduce the State's budget shortfall.

9.      California First claims that while Governor Schwarzenegger was in office, CDGS allegedly entered into a contract on or about November 15, 2010 with California First to sell the eleven properties to California First for $2.33 billion and then to lease the properties back from the new ownership.

10.     Gibbs is informed and believes that California First, LP and California First, LLC were created to acquire the subject properties and AS LP and its general partner, AS LLC, were used to implement the transaction to try to acquire the properties from the State of California (the "Golden State Transaction").  Gibbs is informed and believes, and on that basis alleges, that ACRE and Patel control California First, LP and California First, LLC.  Gibbs is also informed and believes that ACRE negotiated the alleged agreement with the State of California and that ACRE created the other Defendants to implement the transaction.

### Financing and Deposits

11.     Gibbs is informed and believes that Defendants claim they arranged for financing from JP Morgan Chase ("Morgan").

12.     On or about October 28, 2010, Gibbs agreed to provide a $5 million deposit (the "October 28 Letter Agreement").

13.     Gibbs entered into a Memorandum of Understanding with an effective date of November 3, 2010 (the "November 3 MOU") with Old Ivy Capital Partners ("Old Ivy"), an owner in AS LLC, and the November 3 MOU provided that Gibbs would be repaid the deposit it provided as well as compensation.

PPAB 2921574v1                                     3

14.     On or about November 3, 2010, Gibbs entered into an agreement (the "November 3 Agreement") with AS LLC, AS LP, Patel and Marvin Tien ("Tien").

15.     The November 3 Agreement entitled Gibbs to receive:  the deposits paid by Gibbs; a $3 million fee; the amount of the working capital Gibbs advanced to Antarctica; two times the amount of the working capital provided by Gibbs; and 10% of Patel's and Tien's aggregate interests in AS LLC.

16.     Gibbs wired the $5 million deposit referenced in the October 28, 2010 Letter Agreement on or about November 3, 2010.

17.     On or about November 15, 2010, Gibbs signed another letter agreement (the "November 15 Letter Agreement") with AS LP, AS LLC, Patel and Tien providing that a Gibbs authorized representative had the sole authority to release working capital advances (up to a maximum amount of $1.2 million) based on written draw requests containing the required information specified in the November 15 Letter Agreement including, but not limited to, the account to which the draw was to be wired, the specific expense incurred or to be incurred, the third party to whom payments were to be made or were made, evidence the payments were or would be made and a representation and warranty from the Antarctica entities that the draw was being used for the sole purpose of the payment or reimbursement for expenses incurred or to be incurred and paid by or on behalf of the Antarctica entities pertaining to the acquisition of the subject properties in the Golden State Transaction.

18.     The November 15, 2010 Letter Agreement also provided that in the event it was terminated for any reason, AS LP, AS LLC, Patel and Tien were required to return promptly all amounts of working capital advanced by Gibbs for payments made to third parties and also to return promptly to Gibbs all amounts of unspent capital provided by Gibbs.

19. On or about November 17, 2010, at Defendants' request, Gibbs wired $500,000 for working capital. Gibbs requested additional information and documentation for additional expenses for the balance of the working capital advances (up to the maximum amount of $1.2 million) but Defendants failed and refused to provide the requested information and documentation.

20. On or about November 29, 2010, the parties entered into an amendment to the November 3 Agreement providing for a second deposit of $5 million to be made by Gibbs (the "November 29 Amended Agreement").

21. On or about November 29, 2010, Gibbs made the second deposit of $5 million.

22. The November 29 Agreement provided that Gibbs was entitled to have the deposits returned to Gibbs, a $6 million fee (increased from $3 million), the amount of the working capital Gibbs advanced, and two times the working capital Gibbs advanced. Gibbs is also entitled to 10% of Patel's and Tien's aggregate interests in the Antarctica entities.

23. California First claims that after Governor Brown took office as the Governor of California he refused to go forward with the Golden State Transaction.

24. On or about February 9, 2011, California First claims that the State gave notice that it would not close the Golden State Transaction.

25. On or about March 3, 2011, a settlement agreement (the "March 3, 2011 Facilitation Agreement") was entered into between California First, LLC, ACRE and Patel.

26. Under the terms of the March 3, 2011 Facilitation Agreement, California First, LLC, ACRE and Patel (Patel and ACRE were referred to as Antarctica since ACRE, through Patel, was the architect of the deal and created the other entities to implement the transaction) agreed, among other things, to cooperate and take action necessary to prosecute the California First Litigation as well as the compensation to be received. The March 3, 2011 Facilitation

Agreement also provided that if the California First Litigation resulted in completion of a "Transaction," defined as settlement of the California First Litigation or a transaction resulting from specific performance, then Defendants would pay the Antarctica Parties a $2 million fee and all identified expenses, including money previously advanced by Gibbs to the Antarctica Parties (March 3, 2011 Facilitation Agreement §§ 6, 8)

27.    Gibbs is informed and believes that on or about March 10, 2011, California First, LP, at the direction and control of California First, LLC, filed the litigation seeking to compel the State of California to go forward with the Golden State Transaction in the case styled as *California First, LP v. California Department of General Services; Scott Harvey, in his capacity as Acting Director of the California Department of General Services, et al.*, case number BC457070 (the "California First Litigation").

**The November 23 Settlement Agreement**

28.    Gibbs made demand on Defendants for Defendants to pay to Gibbs the money Gibbs was entitled to receive including, but not limited to, the $500,000 payment by Gibbs and the other compensation in an amount to be calculated using the formula later set forth in the November 23, 2011 Escrow Agreement.  Defendants have failed and refused to do so.

29.    Instead of immediately commencing litigation, Gibbs and Defendants entered into an agreement to resolve certain issues and to toll the statute of limitations on claims against each other (the "November 23, 2011 Settlement Agreement").  At the time the November 23, 2011 Settlement Agreement was negotiated and executed, Gibbs and the Antarctica Parties knew of the existence and the terms of the March 3, 2011 Facilitation Agreement.  In fact, the November 23, 2011 Settlement Agreement referred to the March 3, 2011 Facilitation Agreement and attached a complete copy of the March 3, 2011 Facilitation Agreement as Annex B.

30.     By the terms of the November 23, 2011 Settlement Agreement, Gibbs and Defendants stated that certain disagreements had arisen between them and that they wished to settle those disputes on the terms of the November 23, 2011 Settlement Agreement and the parties agreed, among other things, that Gibbs is entitled to a portion of the proceeds from the resolution of the California First Litigation.  The parties also agreed that if there was a dispute as to who was entitled to the settlement proceeds, the portion of the settlement proceeds in dispute would be paid into the escrow account.  As a result, all of Defendants are obligated under the November 23, 2011 Settlement Agreement and the November 23, 2011 Escrow Agreement to deposit any funds received out of the settlement of the California First Litigation in the escrow account and Defendants' failure to do so is a breach.  Defendants have failed to deposit the Agreed Portion in escrow, which is a breach, and any payment to an entity not listed in which Patel has an interest is blatant manipulation by Defendants to try, among other things, to avoid the agreed-upon jurisdiction for resolution of this dispute.

31.     Pursuant to the November 23, 2011 Settlement Agreement, the parties also appointed Urban Title Company, Inc. ("Urban Title") in Charlotte, North Carolina as the escrow agent and executed an escrow agreement (the "November 23, 2011 Escrow Agreement").  Urban Title is a title insurance agency which facilitates the issuance of title insurance policies in connection with real estate transactions.  The November 23, 2011 Settlement Agreement and the November 23, 2011 Escrow Agreement provide that if there is a dispute as to who is entitled to the funds placed in escrow, then the escrow agent is entitled to pay those funds "to any court of competent jurisdiction in the State of South Carolina … together with such legal proceedings as are appropriate, and thereupon [the escrow agent would] be discharged."  The November 23, 2011 Settlement Agreement also provides that the March 3, 2011 Facilitation Agreement will be amended as it concerns the obligation to make payment of the Agreed Portion owed to

Defendants and/or related entities or individuals for resolution of the California First Litigation directly to Urban Title as reflected in Amendment Number 1.

32.     Gibbs is informed and believes that on or about November 28, 2011, Amendment Number 1 to the March 3, 2011 Settlement and Transaction Closing Facilitation Agreement ("Amendment No. 1") was executed whereby Defendants agreed to wire the Agreed Portion of settlement proceeds in the California First Litigation to the same escrow agent (Urban Title in Charlotte, North Carolina) designated under the November 23, 2011 Escrow Agreement.

33.     Under the March 3, 2011 Facilitation Agreement and Amendment No. 1, the parties to those agreements also intended for Gibbs to be a third party beneficiary entitled to receive a part of the proceeds from resolution of the California First Litigation that are owed ACRE, the Antarctica entities and/or related individuals or entities.  The November 23, 2011 Settlement Agreement and the November 23, 2011 Escrow Agreement also show that Gibbs was intended to be a third party beneficiary of the March 3, 2011 Facilitation Agreement and Amendment No. 1.

### The Settlement in California

34.     The allegations of the foregoing paragraphs are incorporated herein by reference.

35.     Gibbs is informed and believes that a settlement has been reached in the California First Litigation and that on or about June 19, 2015, the CDGS made payment of the $24 million settlement in the California First Litigation and a part of that payment went to Defendants.  Pursuant to the March 3, 2011 Facilitation Agreement and Amendment No. 1, Defendants were obligated to pay a portion of the $24 million to Urban Title for the benefit of Gibbs within one business day.  Defendants failed to deposit the proceeds from the $24 million settlement into the escrow account at Urban Title in violation of Amendment No. 1, the November 23, 2011 Escrow Agreement and the November 23, 2011 Settlement Agreement.

Plaintiff has not received any portion of the $24 million settlement funds from the California First Litigation. As shown herein, Gibbs is entitled to a portion of the Agreed Portion of the settlement funds in the California First Litigation. Gibbs requested that Defendants disclose the exact amount that is to be paid and an accounting of the proposed distribution of those funds and Defendants refused.

36.     Gibbs instituted claims before the Superior Court for the State of California on May 27, 2015 in the County of San Francisco styled as *Gibbs International, Inc. v. California First, LP*, CGC-15-546019, (the "California Action"), for that Court to order simply that the Agreed Portion of the settlement proceeds in the California First Litigation be paid to the escrow agent in Charlotte, North Carolina. The escrow agent, based on a sworn declaration signed by the president of the escrow agent, will in turn pay the Agreed Portion into court in South Carolina as permitted under the November 23, 2011 Escrow Agreement. As set forth above, Defendants agreed under the terms of the March 3, 2011 Facilitation Agreement as amended by Amendment No. 1 to pay the Agreed Portion to the same escrow agent designated in the November 23, 2011 Settlement Agreement. The California Court denied the request for preliminary injunctive relief as to California First but indicated that Gibbs was free to pursue its rights as to Defendants in the litigation filed in South Carolina and/or New York.

**The New York Litigation**

37.     AS filed an action in the United States District Court for the Southern District of New York on or about April 3, 2015 in the case styled as *Antarctica Star, LP and Antarctica Star, LLC v. Gibbs International, Inc.*, case number 1:15-cv-02630-AT (the "New York Litigation") seeking a declaration that Gibbs is not entitled to any amount and seeking a recovery for "hundreds of millions of dollars" from Gibbs. By filing the lawsuit against Gibbs, Defendants have repudiated their contractual obligations to Gibbs.

**The South Carolina Litigation**

38.     Gibbs filed this lawsuit (the "South Carolina Litigation") to recover from Defendants for damages caused by Defendants' breach of contract and other inappropriate conduct and to have Defendants deposit the Agreed Portion into escrow.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment)**

39.     The allegations of the foregoing paragraphs of the complaint are incorporated herein by reference.

40.     For the reasons set forth above, a real and actual controversy exists as to Gibbs' rights.

41.     Gibbs accordingly seeks a judgment declaring its rights and finding that Defendants are not entitled to any recovery from Gibbs.  Gibbs also seeks a judgment declaring its entitlement to recover as set forth in the following claims for relief.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract – Specific Performance and Damages)**

42.     The allegations of the foregoing paragraphs of the complaint are incorporated herein by reference.

43.     As set forth above, Defendants originally agreed to pay to Gibbs the following:

    A.     Return of the $10 million deposit (which has taken place);

    B.     The $6 million fee;

    C.     The $500,000 in working capital advanced by Gibbs;

    D.     Two times the working capital advanced by Gibbs for a total of $1 million;

    E.     Ten percent of the referenced part of the settlement proceeds from the California First Litigation.

44.     Under the November 23, 2011 Settlement Agreement, the parties agreed that Gibbs shall be entitled to participate in the proceeds of the settlement of the California First Litigation.

45.     The parties to the November 23, 2011 Settlement Agreement and the November 23, 2011 Escrow Agreement also agreed to pay the Agreed Portion of the settlement proceeds into escrow in the event of a dispute and Defendants have failed and refused to do so.

46.     The parties also agreed to a waterfall payment for the amounts to be received by Gibbs with the formula specified in the November 23, 2011 Settlement Agreement and the November 23, 2011 Escrow Agreement.

47.     Under Amendment No. 1, Defendants agreed for amounts payable to Defendants to be paid to Urban Title as the escrow agent.  Defendants have refused to pay Gibbs the amounts to which Gibbs is entitled out of the proceeds of the settlement.

48.     On or about June 19, 2015, the CDGS made payment of the $24 million settlement in the California First Litigation.  Pursuant to the March 3, 2011 Facilitation Agreement, Amendment No. 1, the November 23, 2011 Escrow Agreement and the November 23, 2011 Settlement Agreement, read together, Defendants were obligated to disburse to Urban Title the Agreed Portion of the proceeds from the settlement of the California First Litigation for the benefit of Gibbs.

49.     Defendants, and the parties to the March 3, 2011 Facilitation Agreement and Amendment No. 1 intended Gibbs to be a third party beneficiary to the March 3, 2011 Facilitation Agreement and Amendment No. 1.  Therefore, Gibbs is entitled to a portion of the settlement proceeds and to have those funds paid in into the Urban Title escrow account.

50.     Gibbs has also been damaged by Defendants' refusal to deposit the Agreed Portion of the settlement proceeds into escrow as they agreed to do.

51.     Gibbs made demand on Defendants for payment and Defendants have failed and refused to make payment.

52.     Gibbs is entitled to an order for specific performance requiring Defendants to deposit the Agreed Portion into escrow with the escrow agent.

53.     Gibbs has been damaged by Defendants' breach of the contractual relationship and Gibbs is entitled to recover its damages from Defendants as set forth herein plus such other amounts as may be established at trial.

## THIRD CLAIM FOR RELIEF
### (Breach of the Implied Duty of Good Faith and Fair Dealing)

54.     The allegations of the foregoing paragraphs of the complaint are incorporated herein by reference.

55.     The conduct by Defendants set forth in this Complaint constitutes a breach of the implied covenant of good faith and fair dealing.

56.     Gibbs accordingly has been damaged and is entitled to a judgment against Defendants as set forth herein plus such other amounts as may be established at trial.

## FOURTH CLAIM FOR RELIEF
### (Breach of Third Party Beneficiary Contract)

57.     The allegations of the foregoing paragraphs of the complaint are incorporated herein by reference.

58.     As set forth above, under the March 3, 2011 Facilitation Agreement and Amendment No. 1, the parties to those agreements intended for Gibbs to be a third party beneficiary entitled to receive a portion of the proceeds from resolution of the California First Litigation paid to Defendants.  The November 23, 2011 Settlement Agreement and the

November 23, 2011 Escrow Agreement also show that Gibbs was intended to be a third party beneficiary of the March 3, 2011 Facilitation Agreement and Amendment No. 1.

59.    The circumstances surrounding the execution of Amendment No. 1 show that Gibbs is a third party beneficiary of the March 3, 2011 Facilitation Agreement because, among other things:

A.    The only reason to use Urban Title's escrow account as the escrow deposit account is that Gibbs is intended as a third party beneficiary of the March 3, 2011 Facilitation Agreement.

B.    Amendment No. 1 was executed five days after execution of the November 23, 2011 Settlement Agreement and it provided that all settlement proceeds otherwise payable to Defendants would be paid into the escrow account with Urban Title – the same escrow agent in the November 23, 2011 Settlement Agreement and the November 23, 2011 Escrow Agreement.

C.    The only reason for the escrow agent to be the same under the November 23, 2011 Settlement Agreement and the November 23, 2011 Escrow Agreement, as well as Amendment No. 1, is to benefit Gibbs.

D.    The purpose of Amendment No. 1 was to provide a secure mechanism to ensure that Gibbs could receive a portion of the specified funds. Without this mechanism to ensure payment to Gibbs through the March 3, 2011 Facilitation Agreement, Gibbs would not have signed the November 23, 2011 Settlement Agreement.

E.    By signing Amendment No. 1, the parties intended that Gibbs is a third party beneficiary to the March 3, 2011 Facilitation Agreement and Amendment No. 1. Gibbs is a beneficiary of the Urban Title escrow account and the parties intended that the  March 3, 2011 Facilitation Agreement and Amendment No. 1 would require that a portion of the proceeds from the California First Litigation be paid directly to the Urban Title escrow account for the benefit of Gibbs.

60.    Gibbs made demand on Defendants for payment and Defendants have failed and refused to make that payment.

61.    Gibbs has been damaged and is entitled to judgment against Defendants as set forth herein plus such other amounts as may be established at trial.

## FIFTH CLAIM FOR RELIEF
### (Alter Ego and/or Single Enterprise Liability)
### (General Partnership Liability)

62.     The allegations of the foregoing paragraphs of the complaint are incorporated herein by reference.

63.     Gibbs is informed and believes, and on that basis alleges, that at all relevant times, Defendants, and each of them, were acting as agents, servants, employees, joint venturers, or representatives of each other, and were acting within the full course and scope of their agency, employment and joint venture with the full knowledge, consent, permission, acquiescence and ratification, either express or implied, of each of the other in performing the acts alleged in this complaint.

64.     AS LLC, by virtue of being the general partner of AS LP, is liable for the debts and obligations of AS LP as described in this complaint.

65.     Defendants are also the alter egos of each other and/or acted as a single enterprise with the entities having a unity of ownership and other factors evidencing an alter ego and/or single enterprise relationship.

66.     Plaintiff is informed and believes, and on that basis alleges, that at all relevant times, there is an alter ego relationship between Defendants and that adherence to the fiction of their separate existence would promote injustice.  Based on its investigation this far, Gibbs is informed and believes, and on that basis alleges, that the following facts show the existence of an alter ego relationship between Defendants:

> A.     Defendants were created and controlled by the same person (Patel) to be used collectively and as a single enterprise in the Golden State Transaction.  Patel was the initial and sole limited partner of California First, LP and is the manager of California First, LLC.

> B.     Patel has exerted such control over Defendants and the Antarctica Parties that there is no difference between the entities and each is but a shell and

conduit of the other in the pursuit of a single enterprise. Employees are used interchangeably.

C.     Patel formed ACRE LLC and is the manager of ACRE LLC.

D.     ACRE LLC and Patel previously controlled California First LP.

E.     Patel formed AS LLC and is a member. AS LLC is a general partner of AS LP.

F.     Patel, as manager of AS LLC, formed AS LP. Patel was Antarctica LP's initial limited partner.

G.     Patel, on behalf of himself and on behalf of Defendants and/or the Antarctica Parties, is a signatory to the March 3, 2011 Facilitation Agreement, the November 23, 2011 Settlement Agreement, the November 23, 2011 Escrow Agreement and Amendment No. 1.

H.     Defendants do not have any capital or material assets other than claims to the $24 million settlement proceeds from the California First Litigation.

I.     California First, LLC is the sole general partner of California First, LP. California First, LLC dominated and controlled California First, LP such that there is no difference between them and each is but an instrumentality of the other.

J.     California First, LLC, on behalf of California First, LP, was the signatory to the March 3, 2011 Facilitation Agreement, which had the sole purpose of facilitating California First, LP filing litigation against the State of California regarding the Golden State Transaction. California First, LLC controlled California First, LP and caused California First, LP to file the California First Litigation against the State of California regarding the Golden State Transaction.

K.     Defendants share the same attorneys in the California First Litigation.

67.     Each of the Defendants is also liable for the conduct described in this complaint based on alter ego and/or single enterprise liability, as well as general partnership liability as referenced herein.

**SIXTH CLAIM FOR RELIEF**
**(Fraudulent Conduct)**

68.    The allegations of the foregoing paragraphs of the complaint are incorporated herein by reference.

69.    Defendants have also admitted their own conduct that is fraudulent.  Defendants incredibly conceded in the New York Litigation that:  (1) they entered the November 23, 2011 Escrow Agreement and the November 23, 2011 Settlement Agreement (collectively, the "November 23, 2011 Agreements") "to ensure Gibbs did not derail" the California First Litigation; (2) their only reason for entering the November 23, 2011 Agreements was their hope that the California First Litigation would result in a grant of specific performance (which they said would have made the November 23, 2011 Agreements moot); and (3) they purportedly terminated the November 23, 2011 Settlement Agreement "[w]hen it became clear that the [California First] Litigation would settle."  (Defendants' July 24, 2015 Memorandum of Law in Opposition in the New York Litigation at PP. 11-12)

70.    The November 23, 2011 Settlement Agreement plainly states that it was executed because of Gibbs' assertion that it is "entitled to a share of proceeds" of the California First Litigation.

71.    Under the November 23, 2011 Agreements, Gibbs agreed to forbear from filing a lawsuit so California First could pursue its remedies against the State of California in exchange for Defendants' agreement that Gibbs would be paid from the proceeds of any settlement of the California First Litigation or from a transaction resulting from specific performance.  Per the November 23, 2011 Escrow Agreement, the funds that Gibbs was entitled to be paid would be deposited into escrow for the benefit of Gibbs, which could then be deposited into the court of South Carolina.

72.     Defendants' concession that they lured Gibbs into signing the November 23, 2011 Agreements when Defendants had no intention of performing the agreed-upon responsibilities under the November 23, 2011 Agreements is an admission of fraudulent conduct.

73.     Defendants consummated their fraudulent conduct when they purported to terminate the November 23, 2011 Settlement Agreement as soon as Defendants learned that the California First Litigation would most likely result in a settlement without specific performance. This was a blatant attempt by Defendants to cut off Gibbs' claim to the Agreed Portion of the settlement proceeds arising out of the California First Litigation, which Gibbs was entitled to receive under the November 23, 2011 Agreements.

74.     Defendants were fully aware that Gibbs intended to file suit if they refused Gibbs' demands for payment.  Defendants' intent in inducing Gibbs to enter into the November 23, 2011 Agreements to stop Gibbs from filing suit.  Gibbs would have filed suit but for Defendants' entry into the November 23, 2011 Agreements.

75.     Defendants, by their own admission, entered the November 23, 2011 Agreements with Gibbs "to allow it to focus on the [California First] Litigation" and then Defendants pursued the California First Litigation for years while Gibbs refrained from suing Defendants and reasonably believed that Defendants would perform their obligations under the November 23, 2011 Agreements if a settlement was reached by paying the Agreed Portion of the settlement proceeds arising out of the California First Litigation to the escrow agent to be paid to a South Carolina court.

76.     Again, had Gibbs known that Defendants only executed the November 23, 2011 Agreements "to ensure Gibbs did not derail" the California First Litigation and that Defendants intended to breach the November 23, 2011 Agreements if Defendants settled the case without

specific performance, Gibbs would not have entered the November 23, 2011 Agreements and it would not have waited to pursue its rights.

77.     Defendants knowingly and/or with reckless disregard falsely represented and/or failed to disclose their true intentions in entering into the November 23, 2011 Agreements.

78.     Gibbs was unaware of the false representations and/or failure to disclose by Defendants, and Gibbs rightfully relied on Defendants to be honest and forthcoming in their dealings with Gibbs.  Gibbs would not have entered into the November 23, 2011 Agreements if Defendants had revealed their true intentions.

79.     Gibbs also would not have continued to work with Defendants if Defendants had revealed their true intentions.

80.     As a direct and proximate result of Defendants' conduct, Gibbs has been damaged.

81.     Gibbs seeks to recover compensatory damages in an amount to be established at trial due to this fraudulent conduct.

82.     Gibbs also seeks to recover punitive damages from Defendants due to their willful, wanton and/or grossly negligent conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Gibbs requests that the Court award the following relief:

1.     Enter an order for specific performance requiring Defendants to pay into escrow the Agreed Portion of the settlement proceeds arising out of the California First Litigation;

2.     Enter a judgment in favor of Gibbs and against Defendants in the amount referenced herein plus such other amounts as may be proven at trial for compensatory damages;

3.     Enter a judgment in favor of Gibbs and against Defendants for punitive damages;

4.      Tax the costs of this action against Defendants and award Gibbs its attorneys' fees, costs and expenses;

5.      Award a trial by jury on all issues so triable; and

6.      Grant such other and further relief in favor of Gibbs as the Court deems just and proper.

This 20th day of January, 2016.


s/KEVIN A. DUNLAP
Kevin A. Dunlap
Parker Poe Adams & Bernstein LLP
100 Dunbar Street, Suite 206
Spartanburg, SC 29306
Email:  kevindunlap@parkerpoe.com
Phone:  (864) 591-2030
Facsimile:  (864) 591-2050

Attorney for Plaintiff
Gibbs International, Inc.